## BARNSDALL REFINING CO. v. DESMOND.

No. 24885. June 4, 1935.

Rehearing Denied July 9, 1935.

Jack Paden, for plaintiff in error.

Melton & Melton, for defendant in error.

PER CURIAM. This action was brought in the district court of Grady county by T. L. Desmond, defendant in error, to recover damages from Barnsdall Refining Company, plaintiff in error. Judgment was for defendant in error, and Barnsdall Refining Company appeals. The parties will be referred to as they appeared in the trial court.

The plaintiff, Desmond, owned a certain filling station in Minco, Okla. During the summer and fall of 1930 certain negotiations were carried on between the plaintiff and agents of the defendant pertaining to the leasing of said filling station and the handling of the products of the defendant at Minco. Finally, on the 24th day of November, 1930, the parties executed two instruments: One leasing the filling station to the defendant for a period of two years, and the other, designated "Operating Agreement," pertained to the handling of the products of the defendant by the plaintiff. By the terms of said operating agreement, Desmond was to "represent said company in the resale of its products at said location," and was to receive an allowance of four cents per gallon for each gallon purchased from the company for resale from or through the leased premises. There was a further provision that the operator, Desmond, might be dismissed at the will of the company. In June, 1931, the company exercised its right to dismiss Desmond and canceled the foregoing written contracts. At the trial of the case the court sustained a demurrer to the evidence pertaining to damages resulting from said cancellation of said contracts. No complaint is made of said action, and, therefore, said written contracts drop out of consideration except as they may affect or bear upon an alleged oral agreement between the parties. There is then left for consideration only said oral agreement. The trial court submitted the case to the jury on the oral agreement, and verdict and judgment were for plaintiff. In his petition the plaintiff alleged said oral contract was made at the time the written contracts were executed.

By the terms of the alleged oral agreement, according to plaintiff's contention, it was agreed that all products purchased for resale through the filling station at Minco would be obtained from the company's station at El Reno and plaintiff should be paid or allowed 1½ cents per gallon for transporting the same from said El Reno station to his station at Minco; that this arrangement was to continue till such time as said defendant company should put in a bulk station at Minco, which it was alleged would be done within a few months from the date of making said oral agreement, to wit, November 24, 1930. It was further alleged that by the terms of said oral contract the defendant company was to deliver to the plaintiff at El Reno station such quantities of gasoline as needed to be re-

sold to farmers for tractor use free from tax upon presentation of the so-called "tractor affidavit"; said delivery of gasoline to plaintiff was to be at the regular price less the tax. It was further alleged that said oral contract was ratified by the company by the delivery of large quantities of said gasoline upon presentation of said tractor affidavits and likewise by paying or allowing to plaintiff the sum of 1½ cents per gallon for transporting the gasoline to Minco. There was a further allegation that plaintiff had built the business to about 2,500 gallons per month upon which he was receiving 1½ cents per gallon for transportation when the company, in June, 1931, refused to make any deliveries thereafter to plaintiff at the El Reno station. No specific amount was alleged as damages resulting from the termination of "tractor affidavit" phase of the business, but it was alleged plaintiff was damaged $37.50 per month because of the termination of the transportation. Of course, there were allegations relative to damages resulting from the termination of the written contracts, but as above stated this phase of the suit was disposed of in the trial court and is not before us.

In the trial of the case it appears that counsel and witnesses referred to that phase of the business alleged to be included in the oral contract as the "wholesale business". The evidence pertaining to the making of the alleged oral contract is very meager, indefinite, and unsatisfactory; and, in spite of counsel's repeated efforts to clarify and strengthen the evidence, the following testimony by the plaintiff himself seems to be the most favorable evidence adduced on his behalf:

"Q. Now, Mr. Desmond, after these contracts were made (the written contracts) did you have any kind of a verbal agreement with the Barnsdall Company through its agents, with reference to handling wholesale gasoline and oils at Minco? A. That was the understanding on the start; I was to handle wholesale gas. Q. That was part of the original agreement, but wasn't put in these contracts? A. I contended for that before I took the contracts—Q. You say that was part of the original agreement that you had with Mr. Dukemeinier and Mr. Palmer (agents of the defendant) before you made the— A. Yes. Q. Well now, what was the arrangement about the handling of the wholesale gasoline and the oil? A. Well, my understanding was when I contracted with them that I was to have the wholesale and retail business, and they were to put in a bulk station as soon as they

could, and for me to handle it by truck to Minco— Q. What do you mean by bulk station? A. A bulk station at Minco, for gasoline, for wholesale. Q. But when did they agree with you to put in that station? A. There wasn't any time set; in fact, it was mentioned time and again, and they said they had to have time. Q. Had to have time to put it in? A. Yes. Q. Did you have any agreement with them to receive—about receiving your gasoline, how were you going to get it until they put the station in? A. I was to receive it at El Reno bulk station until they put the bulk station in there. Q. How about the hauling of it, who was to haul it? A. I was to haul it, and I was to get pay for hauling till I got a tank and equipment—I was to haul it."

From the foregoing it is apparent that whatever was done toward making an oral agreement either preceded or accompanied the execution of the written instruments, and therefore was by operation of law, superseded by the written contracts. Section 9456, O. S. 1931, provides as follows:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

Counsel for plaintiff contend, however: that the alleged oral contract is separate and independent, and that its terms in no way conflict with the provisions of the written agreements. We are not unmindful of this rule of law and have carefully considered the cases cited, but the rule has no application to the case at bar. The testimony clearly shows that the parties were negotiating relative to the handling of the company's products. Those negotiations culminated in the execution of the written instruments. The very nature of that part of the alleged oral agreement providing for the payment to plaintiff of 1½ cents per gallon for transporting the gasoline from El Reno to Minco is wholly dependent upon and intertwined with the written agreement. Neither can we agree with counsel's contention that by paying plaintiff for the hauling, the defendant ratified the oral agreement. Each hauling was in fact a separate transaction and paid for from time to time. Plaintiff's own testimony shows that the defendant might at any time put in a bulk station at Minco which would do away with the hauling.

Our view of this case, therefore, is that the parties had certain oral negotiations upon the matter of handling and marketing the products of the defendant; that these negotiations terminated in the execution of the two written instruments referred to above; and that therefore said written instruments superseded all said oral negotiations and embody as a matter of law all the contractual relations established between the parties. Therefore, since all the evidence leads to said conclusion, it follows that there was no evidence to sustain the judgment in damages for breach of the alleged oral contract, and the trial court should have sustained the demurrer to plaintiff's testimony.

There is another reason why the evidence was insufficient to support a judgment. There was some evidence from which it might be inferred the oral contract was for a period of two years by reason of the fact the written contract was for that period; but that inference arises by reason of the dependence of the allleged oral contract upon the written one, and only makes it more obvious that the oral contract does not relate to independent matter. Aside from such evidence, the only other approach to fixing a definite duration was when plaintiff's attorney asked if it was for a period of two years, but the question was not answered. We need not here determine what effect the statute of frauds would have if the contract had been for a period of two years. It is obvious that there being no definite period for the running of the contract, there could be no action based upon the termination thereof by the defendant.

Other reasons are assigned why the judgment should be reversed, but the view we take of the matter makes it unnecessary to consider them.

Our attention is called to the fact defendant had a cross-petition against plaintiff, but the question pertaining to the same was not preserved in its motion for a new trial and is not before this court. It is true the petition in error alleges the trial court committed error in not directing a verdict for defendant, but the record discloses that defendant did not move for a verdict in its favor.

It was error for the trial court to overrule the demurrer of the defendant to the evidence of the plaintiff. This cause is therefore reversed and remanded, with instruction to the trial court to proceed in accordance with the opinion here expressed.

The Supreme Court acknowledges the aid

of Attorneys Irving D. Ross, H. S. Burke, and Neal A. Sullivan in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Ross and approved by Mr. Burke and Mr. Sullivan, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.